## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **NATIONAL SECURITY ARCHIVE** | ) |
| 2130 H Street, N.W., Suite 701 | ) |
| The Gelman Library | ) |
| Washington, DC 20037, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  C. A. No. _____ |
| | ) |
| **DEPARTMENT OF STATE** | ) |
| 2201 C Street, N.W. | ) |
| Washington, DC 20520, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

## COMPLAINT FOR INJUNCTIVE RELIEF

1.  This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.
Plaintiff National Security Archive seeks injunctive and other appropriate relief for the
processing and release of agency records requested by plaintiff from defendant Department of
State.  Specifically, plaintiff seeks disclosure of records of telephone conversations of former
Secretary of State Henry A. Kissinger compiled between 1973 and 1976.  Plaintiff initially
requested the records more than thirteen years ago, and again requested their disclosure several
months ago.  Despite the passage of time and plaintiff's patience, the agency still has not fully
responded to plaintiff's FOIA requests, by failing to review and release well over 600 Kissinger
telephone conversation transcripts that have been under appeal since 2007.

### Jurisdiction and Venue

2.  This Court has both subject matter jurisdiction over this action and personal
jurisdiction over the parties pursuant to 5 U.S.C. §§ 552(a)(4)(B).  This Court also has

jurisdiction over this action pursuant to 28 U.S.C. § 1331.  Venue lies in this district under 5

U.S.C. § 552(a)(4)(B).

**Parties**

3.  Plaintiff National Security Archive ("the Archive"), founded in 1985, is an

independent non-governmental research institute and library.  The Archive collects and publishes

declassified documents obtained through the Freedom of Information Act.  The Archive also

serves as a repository of government records on a wide range of topics pertaining to the national

security, foreign, intelligence, and economic policies of the United States.  The Archive won the

1999 George Polk Award, one of U.S. journalism's most prestigious prizes, for – in the words of

the citation – "piercing the self-serving veils of government secrecy, guiding journalists in the

search for the truth and informing us all."  It also was awarded the 2005 Emmy Award for

outstanding achievement in news and documentary research.  The Archive is a representative of

the news media as defined in 5 U.S.C. § 552(a)(4)(a)(ii).

4.  Defendant Department of State ("State") is a department of the Executive Branch of

the United States Government.  State is an "agency" within the meaning of 5 U.S.C. § 552(f).

**The Kissinger Telephone Records**

5.  Henry A. Kissinger served as Assistant to the President for National Security Affairs

during the presidential administrations of Richard Nixon and Gerald Ford from January 1969 to

October 1975.  He also served as Secretary of State for both presidents from September 1973 to

January 1977.  As national security adviser and as Secretary of State, Kissinger routinely kept

detailed records of his telephone conversations. They began as detailed summaries but quickly

became nearly verbatim records of conversations with a variety of figures, including presidents

Nixon and Ford, cabinet officers and other senior U.S. government officials, ambassadors and

foreign ministers, as well as members of Congress and, as Kissinger became a celebrity, show business personalities.  By keeping these telephone conversation summaries ("telcons"), Kissinger and his White House and State Department aides could follow up current decisions and ensure that any required actions were taken.  That Kissinger had a White House aide or secretary listening in and transcribing the phone conversations was closely held information; only a handful of people in the government knew about the telcons, although word of them eventually became public.

6.  When Kissinger left the U.S. government in January 1977 he made legal arrangements with the Library of Congress to receive his papers, including the collection of telcons.  Since then Kissinger has kept his papers under tight control, closed to the public until five years after his death. In 1977, when journalists and media organizations filed a FOIA lawsuit to open up the papers, the lower courts ruled that the telcons should be returned to the State Department for review, but the Supreme Court reversed the decision declaring that telcons were not covered by the FOIA because of their location at the Library of Congress.  *Kissinger v. Reporters Committee for Freedom of the Press*, 445 U.S. 136 (1980).  In recent years, through an arrangement with Kissinger, the Department of State Historian's Office has had access to the papers so that selected documents could be used for the *Foreign Relations of the United States* historical series.

7.  When the Supreme Court issued its ruling in 1980, it left open a door: the U.S. government could retrieve the records under the Federal Records Act, which provided authority for the Archivist of the United States, the agency head, and the Attorney General to recover improperly removed records.  Accordingly, in 2001 plaintiff filed a draft legal complaint with the State Department, the National Archives, and the Justice Department informing them of its willingness to file suit to compel the government to comply with the Federal Records Act.  The

State Department Legal Adviser agreed with plaintiff that Kissinger had illegally removed the

Telcons.  To avert litigation, in August 2001, Kissinger provided copies of his telcons to the

State Department and the National Archives (where they were transferred to the Richard Nixon

Presidential Material Project, which later became the Nixon Presidential Library).  That same

month, plaintiff filed a FOIA request to defendant State Department for declassification and

release of the telcons in the agency's possession.   As a result of its efforts to make the material

public, plaintiff disseminated over 15,000 of the Kissinger telcons in electronic publications in

2007 and 2014.  However, as set forth below, many of the records have not yet been released by

defendant State.

### Plaintiff's FOIA Requests and State's Failure to Respond in a Timely Manner

8.  By letter sent to defendant State on August 10, 2001, plaintiff requested under the

FOIA "[c]opies of transcripts of Secretary of State Henry Kissinger's telephone conversations as

recently transferred by Mr. Kissinger to the Department" (citing State Department press release

announcing the acquisition).

9.  By a series of letters dated September 21, 2004, defendant State informed plaintiff that

it was withholding some of the requested information from disclosure, and advised plaintiff of its

right to appeal that determination.

10.  By a series of letters sent to defendant State in October and November 2004, plaintiff

timely appealed defendant State's determination to withhold some of the requested information.

11.  By a series of letters dated June 6, 2005, defendant State informed plaintiff of

determinations made by the agency's Appeals Review Panel.  Defendant State advised plaintiff

that some of the requested information would be disclosed, but that the withholding of other

requested information had been upheld.

12.  By a series of letters dated June 11, 2007, defendant State informed plaintiff that it was withholding some of the requested information from disclosure, and advised plaintiff of its right to appeal that determination.

13.  By letter dated July 7, 2007, plaintiff timely appealed defendant State's determination to withhold some of the requested information.

14.  By letter dated August 14, 2007, defendant State acknowledged receipt of plaintiff's appeal dated July 7, 2007.

15.  By two letters dated April 14, 2008, defendant State informed plaintiff that it was withholding some of the requested information from disclosure, and advised plaintiff of its right to appeal that determination.

16.  By two letters dated April 24, 2008, plaintiff timely appealed defendant State's determination to withhold some of the requested information.

17.  By letter dated May 24, 2008, defendant State acknowledged receipt of plaintiff's appeals dated April 24, 2008.

18.  By letter dated June 9, 2009, defendant State informed plaintiff that it was withholding some of the requested information from disclosure, and advised plaintiff of its right to appeal that determination.

19.  By letter dated June 11, 2009, plaintiff timely appealed defendant State's determination to withhold some of the requested information.

20.  By letter dated June 20, 2009, defendant State acknowledged receipt of plaintiff's appeal dated June 11, 2009.

21.  By a series of letters dated November 20, 2013, defendant State informed plaintiff of determinations made by the agency's Appeals Review Panel.  Defendant State advised plaintiff

that some of the requested information would be disclosed, but that the withholding of other requested information had been upheld.

22.  By letter sent to defendant State on November 21, 2014, plaintiff requested under the FOIA "declassification review and release of all transcripts of Secretary of State Henry Kissinger's telephone conversations which are currently under review by [State's] Appeals Review Panel or other government offices as a result of a FOIA appeal filed by [plaintiff] on 7 July 2007 . . ."

23.  By letter dated December 15, 2014, defendant State acknowledged receipt of plaintiff's FOIA request dated November 21, 2014.

24.  Notwithstanding the fact that plaintiff submitted its initial FOIA request for the Kissinger telcons more than thirteen years ago, to date, defendant State has not fully responded to plaintiff's FOIA requests and appeals, in which well over 600 Kissinger telephone conversation transcripts are at issue.

25.  Defendant State has violated the applicable statutory time limit for issuing responses to FOIA requests and appeals.

26.  Plaintiff has exhausted the applicable administrative remedies.

27.  Defendant State has wrongfully withheld the requested records from plaintiff.

## CAUSE OF ACTION

### Violation of the Freedom of Information Act for
### Wrongful Withholding of Agency Records

28.  Plaintiff repeats and realleges paragraphs 1-27.

29.  Defendant State has wrongfully withheld agency records requested by plaintiff.

30.  Plaintiff has exhausted the applicable administrative remedies with respect to Defendant State's wrongful withholding of the requested records.

31. Plaintiff is entitled to injunctive relief with respect to the release and disclosure of the requested records.

## Requested Relief

WHEREFORE, plaintiff prays that this Court:

A. order defendant State to disclose the requested records in their entirety and make copies available to plaintiff;

B. provide for expeditious proceedings in this action;

C. award plaintiff its costs and reasonable attorneys' fees incurred in this action; and

D. grant such other relief as the Court may deem just and proper.

Respectfully submitted,

DAVID L. SOBEL
D.C. Bar No. 360418

5335 Wisconsin Avenue, N.W.
Suite 640
Washington, D.C. 20015-2052
(202) 246-6180
sobel@att.net

Counsel for Plaintiff